**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

JOHN BAKER, individually and on behalf
of all others similarly situated,

        *Plaintiff,*

        v.

INDEX EXCHANGE INC. and INDEX
EXCHANGE USA, LLC,

        *Defendants.*

Case No. 1:25-cv-10517

Hon. Matthew F. Kennelly

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

III.    ARGUMENT........................................................................................................ 3

        A.      Specific Personal Jurisdiction Exists Over Defendants......................................3

                1.      Plaintiff has made a prima facie showing of jurisdiction ...................4

                2.      Plaintiff pleads sufficient forum- and suit-related contacts...............4

                3.      Exercising jurisdictions over Defendants is fair .................................8

                4.      Jurisdictional discovery should be allowed to answer open questions
                        ..................................................................................................9

        B.      The Crime-Tort Exception Invalidates Any Consent Defense to Plaintiff's
                Wiretap Claim.......................................................................................10

                1.      The BSD Rule applies to Index Exchange ...........................................11

                2.      Plaintiff alleges Temu is a "covered person."....................................14

III.    CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)......................................................................................5 n.3

*Meyer v. Holley*,
  537 U.S. 280 (2003)............................................................................................11

**U.S. Court of Appeals Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ...........................................................................7–8

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
  377 F.3d 682 (7th Cir. 2004) ..............................................................................15

*Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*,
  212 F.3d 1031 (7th Cir. 2000) ............................................................................12

*B.D. by & through Myer v. Samsung SDI Co.*,
  91 F.4th 856 (7th Cir. 2024) .............................................................................5, 8

*be2 LLC v. Ivanov*,
  642 F.3d 555 (7th Cir. 2011) ................................................................................8

*Curry v. Revolution Lab'ys, LLC*,
  949 F.3d 385 (7th Cir. 2020) .......................................................................4, 6, 9

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2012) ................................................................................9

*Illinois v. Hemi Group LLC*,
  622 F.3d 754 (7th Cir. 2010) ............................................................................6, 9

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
  623 F.3d 440 (7th Cir. 2010) ................................................................................8

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ................................................................................4

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*,
  475 F.3d 783 (6th Cir. 2007) ..............................................................................13

*uBID, Inc. v. GoDaddy Group, Inc.*,
623 F.3d 421 (7th Cir. 2010) ..............................................................4, 6, 8, 9

*Wachovia Sec., LLC v. Banco Panamericano, Inc.*,
674 F.3d 743 (7th Cir. 2012) ...........................................................13 n.6

**<u>U.S. District Court Cases</u>**

*Am. Health Info. Mgmt. Ass'n v. Archetype Innovations, LLC*,
23 C 3363, 2024 WL 2801651 (N.D. Ill. May 31, 2024) ..............................................8

*Dale v. Deutsche Telekom AG*,
No. 1:22-CV-03189, 2023 WL 7220054 (N.D. Ill. 2023) ..............................................9

*Esquivel v. Airbus Americas, Inc.*,
No. 1:20-CV-07525, 2021 WL 4395815 (N.D. Ill. 2021) ..............................................9

*Flagstar Bank, FSB v. S. Star Cap., LLC*,
No. 13-CV-10290, 2014 WL 667966 (E.D. Mich. 2014).................................................14

*Garden City Boxing Club, Inc. v. Dominguez*,
04 C 0351, 2006 WL 1517775 (N.D. Ill. May 23, 2006) ..............................................11

*J.A.G.P. through Lopez v. Aerolineas Damojh, S.A. de C.V.*,
No. 1:19-CV-02552, 2021 WL 5998511 (N.D. Ill. 2021) ...........................................10

*Medline Indus., Inc. v. Diversey, Inc.*,
No. 20 C 4424, 2020 WL 5763637 (N.D. Ill. 2020)........................................................9

*Monster Energy Co. v. Wensheng*,
136 F. Supp. 3d 897 (N.D. Ill. 2015) ........................................................................6

*Moomaw v. GeoSnapShot PTY LTD*,
No. 3:23-CV-1321-DWD, 2024 WL 991531 (S.D. Ill. Mar. 7, 2024) ........................10

*Mutnick v. Clearview AI, Inc.*,
No. 20-cv-0512, 2020 WL 4676667 (N.D. Ill. 2020) ....................................................6

*Payton v. Kale Realty, LLC*,
No. 13 C 8002, 2014 WL 4214917 (N.D. Ill. 2014)........................................................6, 9

*Plastics Plus, Inc. v. Fortis Plastics, LLC*,
No. 2:12-CV-10125, 2013 WL 6547866 (E.D. Mich. 2013).......................................13

*Q.J. v. PowerSchool Holdings, LLC*,
No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025)....................................10

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. 2025) ..................................................10

*Thomas v. Khrawesh*,
272 F. Supp. 3d 995 (E.D. Mich. 2017)...................................................................14

*UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*,
289 F. Supp. 3d 852 (N.D. Ill. 2018) ....................................................................13 n.6

**State Court of Appeals Cases**

*Fontana v. TLD Builders, Inc.*,
840 N.E.2d 767 (Ill. App. Ct. 2005) ...........................................................................13

*Green v. Ziegelman*,
873 N.W.2d 794 (Mich. Ct. App. 2015) .......................................................................13

*United Ins. Grp. Agency, Inc. v. Patterson*,
No. 299631, 2011 WL 5067251 (Mich. Ct. App. 2011).............................................13

<u>**Statutes and Regulations**</u>

18 U.S.C. § 2510, et seq...............................................................................................1

18 U.S.C. § 2511(1)(a)................................................................................................10

18 U.S.C. § 2511(2)(d) ...............................................................................................10

28 C.F.R. § 202 ............................................................................................................1

28 C.F.R. § 202.208 ...................................................................................................14

28 C.F.R. § 202.211(a); (b)(8) ...................................................................................15

28 C.F.R. § 202.215 ...................................................................................................11

28 C.F.R. § 202.256 ...................................................................................................15

28 C.F.R. § 202.305(a)................................................................................................12

28 C.F.R. § 202.305(b)(1)...........................................................................................12

28 C.F.R. § 202.305(b)(2)...........................................................................................12

28 C.F.R. § 202.601 ...................................................................................................14

**Secondary Sources**

*Attorney General Miyares Demands Answers About Online Retailer Temu's Business Practices and Chinese Communist Party Connections*, Office of the Attorney General of VA, https://perma.cc/VYE3-7M2V ...................................................................................15

Diane Rinaldo, *Looking Beyond TikTok: The Risks of Temu, Center for Strategic & International Studies* (Oct. 24, 2024), https://perma.cc/DXB5-BDPX ...............................................14

Foo Yun Chee & Helen Reid, *Temu's Dublin Office Raided by EU Regulators on Chinese Subsidy Concerns*, Reuters (Dec. 10, 2025), https://perma.cc/4PLQ-SNQC ..............15

Hilal Aka, *The FTC's Amazon-Temu Blunder: Working With China to Target American Tech*, Aegis Insights (Jan. 31, 2025), https://perma.cc/2N97-NNN6 ....................................15

## I. INTRODUCTION

Defendants Index Exchange Inc. ("Index Exchange") and Index Exchange USA, LLC ("IE USA," together with Index Exchange, "Defendants") operate a platform that solicits and sells advertising spots to be displayed on websites and apps that partner with Defendants (the "RTB System"). Unknown to website and app users, the RTB System collects personal data and information about the users, such as their IP address, the specific websites they visit, and their inferred location. Defendants then share this information with prospective advertisers, including Temu—an advertiser with ties to the Chinese Communist Party. Defendants' surreptitious interceptions of the contents of users' communications with the websites they are visiting violate the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. (the "Wiretap Act"). And because Defendants use their exchange to send Americans' personal information *en masse* to a company linked to China, Defendants violate the Bulk Sensitive Data Rule, 28 C.F.R. § 202 (the "BSD Rule"), which prohibits precisely such conduct.

Defendants first move to dismiss the First Amended Complaint ("FAC") for lack of jurisdiction. The Court, however, can appropriately exercise specific personal jurisdiction. IE USA, in addition to being registered to do business in Illinois, acts as the employer of U.S.-based employees of Index Exchange, including any in Illinois whose work involves the RTB System. Index Exchange is also fairly haled into court here: it set up an advertising exchange that does significant business in Illinois, collecting personal information from Illinoisans like Plaintiff, then sharing it with entities like Temu and monetizing it through ad sales on the RTB System.

Defendants next turn to the Wiretap Act. Significantly, Defendants do not argue that Plaintiff has failed to plead any of the underlying elements of the Wiretap Act claim. Instead, they argue his claim should be dismissed because the website Plaintiff visited "consented" to the

interception, which Defendants argue precludes liability. This ignores that any consent defense is invalidated by the crime-tort exception, which applies when the communication is intercepted to commit a tortious act. Here, that tortious act is a violation of the BSD Rule.

Defendants argue against the BSD Rule's application, claiming Index Exchange is not subject to the BSD Rule, and Temu is not sufficiently alleged to be a "covered person" with whom data transfers are restricted. These arguments are not persuasive. And though Index Exchange is nominally a Canadian corporation, its key decisionmakers are located in the U.S. and employed by IE USA. They are U.S. Persons subject to the BSD Rule. By directing the operation of the RTB System and the conduct that enables mass data sharing with Temu from within the U.S., they are engaging in prohibited transactions for which their employers are vicariously liable. In addition, Index Exchange and IE USA are plausibly alleged to be alter egos of one another such that they can be treated as one for purposes of determining whether Defendants are a U.S. person. Finally, Plaintiff sufficiently pleads Temu's links to China to withstand dismissal. Defendants' motion to dismiss should be denied in its entirety.

## II.      BACKGROUND

Defendants provide interested website developers with code that connects their websites to the RTB System. (FAC ¶ 37.) Defendants' code surreptitiously monitors and intercepts website users' engagement with the platform. (*Id.* ¶ 54) This includes capturing full URLs, which contain information such as the specific search terms a user typed in, or that reflect the complete contents of the webpages they visited. (*Id.* ¶ 24.) Defendants also record information about the user, such as their IP address, inferred location, and other personal data. (*Id.*) Defendants take this personal information, enrich it with other demographic information, and send "bid requests" to advertisers who may want to show that person an ad. (*Id.* ¶¶ 24–26, 28.) Potential advertisers who receive

the bid requests use the data Defendants have aggregated and included to decide how much they're willing to pay to target an individual. (*Id.* at 29.) Winners of the auctions then have their ad pushed to the website or app user through the RTB System and Defendants' code. (*Id.* ¶ 30.)

Defendants have integrated Temu, a Chinese ecommerce platform, into their RTB System. (*Id.* ¶ 8.) Temu has widely been linked to the Chinese government. (*Id.* ¶¶ 6–7, 31, 39–40.) The BSD Rule prohibits the transfer of bulk amounts of Americans' data to certain entities linked to "countries of concern," like China. (*Id.* ¶¶ 2–5.) U.S. sensitive personal data includes persistent identifiers like those captured by Defendants' RTB system. (*Id.* ¶¶ 38, 82–85.) And Temu is a "covered person" given its ties to China. (*Id.* ¶¶ 78–79.)

Plaintiff is an Illinois resident who visited a website, BibleGateway.com, to read scripture. (*Id.* ¶ 48.) Through Defendants' code on the site, it was integrated into the RTB System. (*Id.*) Defendants surreptitiously tracked him, recording his search terms, the URLs of the pages he viewed (which revealed the bible verses he was reading), and other data about him, like his IP address, browser data, and behavioral information. (*Id.* ¶¶ 49–54.) Defendants collected even more information about Plaintiff through a "cookie sync" that connected to third-party advertising partners. (*Id.* ¶ 56.) Through the RTB System, Defendants shared Plaintiff's personal data with Temu. (*Id.* ¶ 57.)

## III.    ARGUMENT

### A.    Specific Personal Jurisdiction Exists Over Defendants.[1]

Defendants contend their connections to Illinois were random and fortuitous, and that exercising jurisdiction over them would not be fair. Plaintiff makes a prima facie showing that Defendants' advertising operations rely on collecting and profiting off of Illinoisans'

---

[1]    Plaintiff does not argue general jurisdiction exists over Defendants.

information—operations that form the basis of Plaintiff's complaint. At the least, Plaintiff has put forth sufficient facts to warrant the completion of jurisdictional discovery.

### 1.      Plaintiff has made a prima facie showing of jurisdiction.

"At this early stage in the litigation, and without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). Defendants suggest that, because they submitted affidavits in support of their motion, Plaintiff is required to submit counter-affidavits that go beyond the operative complaint and specifically rebut their affidavits' content. That is incorrect. A defendant may certainly submit affidavits in support of its motion to dismiss based on lack of personal jurisdiction. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). However, this does not increase a plaintiff's burden, trigger a requirement to submit his own affidavits, or change the presumption that the plaintiff is still "'entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). Courts "will accept as true any facts in the defendants' affidavits that do not conflict with anything in the record, either by way of [plaintiff's] complaint or other submissions." But "where there is a factual conflict between the record and the defendants' affidavits, [courts] will resolve them in [the plaintiff's] favor." *Curry*, 949 F.3d at 393.

### 2.      Plaintiff pleads sufficient forum- and suit-related contacts.

Defendants argue that they did not "direct[] complaint-related conduct to Illinois" and had no reason to know their services were used here. (Dkt. 30 (the "Mem.") at 6.) This takes aim at the elements of specific personal jurisdiction that require: "(1) purposeful availment—the defendant[s] must have purposefully directed [their] activities at the forum state or purposefully

availed [themselves] of the privilege of conducting business in the forum; [and] (2) relatedness—the alleged injury must arise out of or relate to the defendant[s'] forum-related activities[.]" *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024). Importantly, a "defendant's contacts with the forum may 'relate to' the plaintiff's claims even in the absence of a 'strict causal relationship' between the contacts and claims." *Id.* at 862 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)).

Attempting to minimize the relevance of their own actions connected to Illinois, Defendants focus on third parties: BibleGateway.com and Plaintiff. (Mem. at 6.) Defendants chalk it up as happenstance that BibleGateway installed Index Exchange's code and that Plaintiff was in Illinois when Defendants intercepted his interactions with the website. (*Id.*) Such gloss ignores the scope of Defendants' business and the allegation that Defendants operate a digital advertising exchange catering to publishers who want to maximize their revenue through location-based advertisements. (FAC ¶ 37.) Plaintiff alleges that Defendants: (i) contract with Illinois companies with respect to their RTB System and ads offered thereon;[2] (ii) collect and share IP addresses and location-based data of Illinois users; and (iii) "intentionally bundle Illinois residents' data" to sell to ad partners, which they could programmatically choose not to do. (FAC ¶ 17.) Once Defendants learn that the potential ad viewer is in Illinois, they don't exclude that person from their platform; they actively use that data to increase the ad spot's value. It is not credible for Defendants to now point to publishers and website visitors and say,

---

[2]    Defendants suggest such contracts are irrelevant to the jurisdictional inquiry. (Mem. at 7.) Not so. To the extent that Defendants have RTB-related contracts with Illinois-based partners—for example the processing or augmentation of data Defendants collect, or sales of ad-space to Illinoisans—these are relevant because they help to demonstrate that "the 'relationship among the defendant, the forum[s], and the litigation'—is close enough to support specific jurisdiction." *Ford Motor Co.*, 592 U.S. at 371 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

"[i]t was all their idea." *uBID, Inc.*, 623 F.3d at 428 ("No more persuasive is [defendant's] argument that its sales to Illinois residents are automated transactions unilaterally initiated by those residents."); *see Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (calling forum contacts "unilateral actions by the customers" "misleading . . . because it ignores several of [defendant's] own actions that led up to and followed" customer's actions).

Defendants employ the RTB System across the country to acquire as much personal information and sell as much ad space to anyone they can wherever those users are—including, as Plaintiff's experience shows, Illinois. (*See* FAC ¶¶ 54–58); *see Curry*, 949 F.3d at 402 (noting defendant "held itself as conducting business nationwide through both its interactive website and other websites"); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 907 (N.D. Ill. 2015) ("[W]here a company 'h[olds] itself out as open to do business with every state' and is 'ready and willing to do business with [that state's] residents,' specific jurisdiction over it is proper."); *Payton v. Kale Realty, LLC*, No. 13 C 8002, 2014 WL 4214917, at *3-4 (N.D. Ill. Aug. 26, 2014) (finding jurisdiction over provider that "made its services available to anyone by way of its website" and, after a customer placed an order, sent messages into Illinois); *Mutnick v. Clearview AI, Inc.*, No. 20-cv-0512, 2020 WL 4676667, at *2 (N.D. Ill. Aug. 12, 2020) (finding jurisdiction where "defendants took biometric information from Illinois residents, created a surveillance database, and then marketed and sold licenses to use this database to entities in Illinois"). Akin to a company offering to sell and ship orders nationwide, it is Defendants' actions to affirmatively collect Illinoisans' information and serve them ads, not the residents' independent actions, that form the relevant contacts. *See Hemi Group LLC*, 622 F.3d at 758 ("It is [defendant] reaching out to residents of Illinois, and not the residents reaching back [through interaction on defendant's website], that creates the sufficient minimum contacts with Illinois

that justify exercising personal jurisdiction.").

While Defendants critique that a subset of Plaintiff's allegations are made "on information and belief," (Mem. at 7), Neil Dorken's affidavit does not rebut them. Dorken does not deny that Defendants: (i) have contracts with Illinois companies related to its RTB System; (ii) collect, package, and sell Illinoisans' data; or (iii) have the capability to screen out Illinoisans' data from sale. (*Compare* FAC ¶ 17 *with* dkt. 32.) Nor could Defendants credibly claim as much, given that Index Exchange's business model is built on collecting, bolstering, and sharing advertising profiles that contain granular user-location data. (*See* FAC ¶ 24.)

In fact, Dorken bolsters the jurisdictional case by averring that IE USA acts as a passthrough by being "the employer of Index Exchange employees that reside in the United States." (Dkt. 32 ¶ 5.) While IE USA may not itself operate the exchange, any Illinois-based employees who work with the RTB platform are nevertheless relevant contacts. Furthermore, Dorken is clear that Illinois is a location from where they "can operationally support an employee;" he is careful never to claim that Defendants have no Illinois-based employees. (*Id.* ¶ 7.) Dorken confirms that Index Exchange opens the RTB System to publishers to integrate their ad offerings. (*Id.* ¶ 9.) Dorken never claims there are any geographical limitations in place. (*Id.*) Dorken admits that Index Exchange's RTB System collects information about visitors (like Plaintiff) to websites (like BibleGateway) and that Index Exchange then uses that information in auctions to serve those visitors ads. (*Id.* ¶¶ 10–11.) Plaintiff alleges this includes sending Illinoisans' information to Temu, (FAC ¶¶ 55–58)—a claim that is unrebutted.

Defendants' authority points to distinguishable cases with truly fortuitous connections. For example, in *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, maintaining an email list with a handful of Indiana-based email addresses on it, and when there

were no purchases related to the underlying claim, was insufficient for jurisdiction. 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014). In *be2 LLC v. Ivanov*, the website collected the information of a mere 20 Illinoisans, hardly the "massive and successful exploitation of the Illinois market" alleged here and in *uBid*. 642 F.3d 555, 559 (7th Cir. 2011); *see also Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 442 (7th Cir. 2010) (finding ties insufficient when Texas doctor's website targeted the "the greater Houston area," and no business activities in Illinois); *Am. Health Info. Mgmt. Ass'n v. Archetype Innovations, LLC*, 23 C 3363, 2024 WL 2801651, at *3 (N.D. Ill. May 31, 2024) (maintaining website accessible in Illinois with unspecified, allegedly infringing material insufficient absent Illinoisans viewing such material). Here, Defendants exploited the Illinois market by collecting and profiting from Illinoisans' information, leading to this suit.

### 3.      Exercising jurisdictions over Defendants is fair.

Defendants argue that exercising jurisdiction over them is unfair. (Mem. at 8); *see B.D. by & through Myer*, 91 F.4th at 862 (recognizing courts "look to several factors, including the burden on the defendant, the interests of the plaintiff and the forum state, the interest in efficient resolution of the dispute, and the shared interest of states in furthering certain substantive social policy"). This argument fails for both Defendants. As for IE USA, it is the employer for any Index Exchange employees based in the U.S., (dkt. 32 ¶ 7), which would include those who work in Illinois on the RTB System. And IE USA is registered to do business in Illinois. (Declaration of Michael Ovca, Ex A.) It can hardly claim it "lacks any contacts" with the state. (Mem. at 9.) Index Exchange solicits Illinois employees and "can operationally support an employee" in the state, as Dorken makes clear. (Dkt. 32 ¶ 7.) This is reflected in the scale of Index Exchange's operations, which reach into Illinois and exploit Illinoisans' data. In short, Index Exchange "set

up an expansive, sophisticated commercial venture online. It held itself out as conducting business nationwide and was apparently successful in reaching customers across the country," including in Illinois. *Hemi Group LLC*, 622 F.3d at 760. Now it wants "to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure." *Id.*

Defendants' general complaints do not show unfairness. "Out-of-state defendants *always* face such a burden, and there is no suggestion that [Defendants'] hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012). Where, as here, there are sufficient minimum contacts with Illinois, there is nothing unfair about haling them into court in this state. *Id.*; *uBID, Inc.*, 623 F.3d at 433. Defendants also ignore that "Illinois has a strong interest in providing a forum for its residents, including [Plaintiff], to seek redress for harms suffered within the state by an out-of-state actor." *Curry*, 949 F.3d at 402; *see also uBID, Inc.*, 623 F.3d at 432. Thus, "[f]rom [Plaintiff's] perspective, this is the most convenient and effective forum to seek relief." *Payton*, 2014 WL 4214917, at *4. Conversely, Defendants fail to identify any court where they believe Plaintiff's claims would be more efficiently or fairly addressed.

### 4. Jurisdictional discovery should be allowed to answer open questions.

If more information is needed, jurisdictional discovery is appropriate. The Court has "broad discretion to order jurisdictional discovery to ascertain whether it has personal jurisdiction over named defendants." *Esquivel v. Airbus Americas, Inc.*, No. 1:20-CV-07525, 2021 WL 4395815, at *1 (N.D. Ill. May 3, 2021). This is appropriate when Plaintiff makes a "colorable" showing of jurisdiction. *Dale v. Deutsche Telekom AG*, No. 1:22-CV-03189, 2023 WL 7220054, at *8 (N.D. Ill. Nov. 2, 2023). "Generally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue." *Medline Indus., Inc. v. Diversey, Inc.*,

No. 20 C 4424, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020); *J.A.G.P. through Lopez v. Aerolineas Damojh, S.A. de C.V.*, 2021 WL 5998511, at *1 (N.D. Ill. Dec. 19, 2021).

Defendants are slated to respond to Plaintiff's jurisdictional discovery. (*See* dkt. 40.) Plaintiff seeks information directly tied to Defendants' connections with the state that will bolster his jurisdictional allegations, including information about employees based here working on the RTB System, the number of Illinoisans whose data Defendants have collected, their earnings from ad sales in connection with that data, and any Illinois-based publishers that they have ties with. (*See* dkts. 39-2, 39-3.) This will also resolve the ambiguities and gaps in the Dorken declaration addressed above. *See Moomaw v. GeoSnapShot PTY LTD*, No. 3:23-CV-1321-DWD, 2024 WL 991531, at *10 (S.D. Ill. Mar. 7, 2024). Even Defendants' cited authority supports allowing "[b]oth parties [to have] a sufficient opportunity to develop the record," including through depositions, before issuing decision. *See, e.g.*, *Q.J. v. PowerSchool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *4 (N.D. Ill. Aug. 20, 2025) (quotations omitted). Plaintiff should be allowed to conclude jurisdictional discovery if the motion is not denied.

### B.       The Crime-Tort Exception Invalidates Any Defense to the Wiretap Act.

Turning to the merits, the Wiretap Act includes an exception to liability if a party to the communication consents to the interception. *See* 18 U.S.C. § 2511(1)(a). But as Defendants acknowledge (Mem. at 10), this does not apply when "such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d); *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *3 (N.D. Ill. Feb. 21, 2025). Plaintiff pleads this crime-tort exception, as Defendants intended to share personal identifiers in bulk with Temu, violating the BSD Rule. (FAC ¶ 78.) Defendants make two arguments against applying the crime-tort exception: that the BSD Rule does not apply to Index Exchange, and that Temu is

10

not alleged to be a covered person.[3] (Mem. at 11.) Neither wins the day.

### 1.     The BSD Rule applies to Index Exchange.

Even though Index Exchange is a Canadian corporation, it is still subject to the BSD Rule's restrictions. First, Index Exchange is subject to the BSD Rule because it is vicariously liable for actions its U.S.-based employees—who are U.S. Persons subject to the BSD Rule—took in violation of it. Index Exchange has high-level employees located in the U.S. alleged to have directed prohibited transactions relating to the RTB System, data collection, and data sharing with covered persons like Temu. (*See* FAC ¶ 80.) The BSD Rule applies to these U.S.-based employees. 28 C.F.R. § 202.256. And facilitating the at-issue bulk transactions of personal data to Temu constitutes a violation of the BSD Rule even if Index Exchange is not a U.S. company. *See* 28 C.F.R. § 202.305(a) ("[N]o U.S. person . . . may knowingly direct any covered data transaction that would be a prohibited transaction or restricted transaction . . . if engaged in by a U.S. person."); 28 C.F.R. § 202.215 ("The term directing means having any authority (individually or as part of a group) to make decisions for or on behalf of an entity and exercising that authority."). Because these U.S.-based persons are acting within the scope of their employment and on behalf of Index Exchange, their violative conduct is fairly imputed to Index Exchange. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."); *Garden City Boxing Club, Inc. v. Dominguez*, 04 C 0351, 2006 WL 1517775, at *3 (N.D. Ill. May 23, 2006) (finding employer vicariously liable for employee's actions that violated broadcasting restriction).

---

[3]     Defendants apparently do not dispute that IE USA is subject to the BSD Rule. (*See* Mem. at 11.) IE USA is an entity organized solely under the laws of the U.S. *See* 28 C.F.R. § 202.256.

The BSD Rule specifically contemplates the instant scenario, where U.S.-based individuals who work for a foreign company direct prohibited data transactions:

> A U.S. person is an officer, senior manager, or equivalent senior-level employee at a foreign company that is not a covered person, and the foreign company undertakes a covered data transaction at that U.S. person's direction or with that U.S. person's approval when the covered data transaction would be prohibited if performed by a U.S. person. The U.S. person has knowingly directed a prohibited transaction.

28 C.F.R. § 202.305(b)(1); *see also* 28 C.F.R. § 202.305(b)(2) ("…that foreign company, under the U.S. persons' operation, undertakes covered data transactions that would be prohibited if performed by a U.S. person. The U.S. persons have knowingly directed a prohibited transaction."). Organizing a foreign corporation while leaving key decisionmakers in the U.S. does not immunize the company from BSD violations. Index Exchange should know this—it involved itself in the rulemaking process that led to the final BSD Rule. (FAC ¶¶ 88–89.)

There is a second, independent reason that Index Exchange is subject to the BSD Rule. Index Exchange is alleged to be an alter ego of IE USA such that their nominally distinct corporate forms may be disregarded. *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000) ("[A] contention that *A* is *B*'s 'alter ego' asserts that *A* and *B* are *the same entity*; liability then is not vicarious but direct.") (emphasis in original). This is distinct from attempting to pierce the corporate veil, where the court is asked to hold a company's principal vicariously liable for the entity's obligation.[4] *Id.* Defendants complicate the inquiry by treating this case as one involving veil-piercing by a judgment creditor seeking to recover against individual corporate officers and citing decisions

---

[4]     Defendants assert that Plaintiff's alter ego claim is backwards, and that a parent company's actions cannot be imputed to a subsidiary. (Mem. at 13.) This ignores the point of alter ego liability, where the two entities are alleged to be one and the same such that directionality is irrelevant. *See Sheet Metal Workers' Nat'l Pension Fund*, 212 F.3d at 1038.

where alter ego liability was decided after fulsome discovery and trial. *See Green v. Ziegelman*, 873 N.W.2d 794, 797 (Mich. Ct. App. 2015); *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767 (Ill. App. Ct. 2005). Under either Michigan or Illinois law, Plaintiff sufficiently pleads alter ego liability such that Index Exchange is appropriately treated as a U.S. Person under the BSD Rule.[5]

Michigan assesses whether a plaintiff alleges that "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Plastics Plus, Inc. v. Fortis Plastics, LLC*, No. 2:12-CV-10125, 2013 WL 6547866, at *4 (E.D. Mich. Dec. 13, 2013). Plaintiff alleges IE USA is a "mere instrumentality" of Index Exchange, pointing to overlapping headquarters, directors, employees, and business operations. (FAC ¶¶ 19–22, 80); *see United Ins. Grp. Agency, Inc. v. Patterson*, No. 299631, 2011 WL 5067251, at *2 (Mich. Ct. App. Oct. 25, 2011) ("[f]acts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, . . . if all capital for the subsidiary is provided by the parent"). Plaintiff alleges Index Exchange used IE USA as its American outpost to commit Wiretap Act and BSD Rule violations, thus satisfying the second prong. (*See* FAC ¶¶ 72–92); *see Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 800 (6th Cir. 2007) (finding of liability would constitute the "fraud or wrong" for purpose of alter ego liability). Finally, Plaintiff alleges that respecting these artificial corporate

---

[5] Courts can assess alter ego liability under Illinois law despite the existence of a foreign corporation. *See UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 289 F. Supp. 3d 852, 856 (N.D. Ill. 2018) (applying Illinois law to alter ego claims involving Texas entities). Illinois' alter ego test requires "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) "that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751–52 (7th Cir. 2012). Illinois' test is satisfied for the same reasons as Michigan's. Because the state of incorporation typically provides the substantive rule of decision for alter ego claims, *id.*, Plaintiff focuses his alter ego analysis on Michigan law.

forms would cause him an unjust loss by working to insulate Index Exchange from BSD Rule compliance. (*See* FAC ¶ 80); *Thomas v. Khrawesh*, 272 F. Supp. 3d 995, 1003 (E.D. Mich. 2017). This is a fact-intensive inquiry. *See Flagstar Bank, FSB v. S. Star Cap., LLC*, No. 13-CV-10290, 2014 WL 667966, at *4 (E.D. Mich. Feb. 20, 2014). Plaintiff pleads enough to withstand dismissal. For these independent reasons, Index Exchange is subject to the BSD Rule.

### 2. Plaintiff alleges Temu is a "covered person."

A "covered person" with which the at-issue data sharing is restricted includes, *inter alia*, foreign entities that are "50% or more owned, directly or indirectly, individually or in the aggregate" by "countr[ies] of concern" or by residents of a country of concern, or entities organized under a country of concern. *See* 28 C.F.R. § 202.211(a); (b)(8). The definition extends to foreign individuals who work for or contract with a country of concern or covered persons. 28 C.F.R. § 202.211(a)(3); (b)(5).

The FAC alleges facts supporting that Temu is at least 50% owned by individuals in China, a country specifically designated as a country of concern, and independently that data transfers to Temu qualify as data transfers to a country of concern. (FAC ¶¶ 1, 5–7, 35, 39–41); *see* 28 C.F.R. § 202.601; 28 C.F.R. § 202.208 (including "any political subdivision, agency, or instrumentality" of China). The company has been condemned as a national security threat, with nearly two dozen attorneys general warning about the company's data practices and ties to individuals in China and the Chinese government, with others instituting legal proceedings. (FAC ¶ 39); *see also* Diane Rinaldo, *Looking Beyond TikTok: The Risks of Temu*, Center for Strategic & International Studies (Oct. 24, 2024), https://perma.cc/DXB5-BDPX ("Temu has existing relationships with arms of the CCP involved in data oversight, control, and propaganda and is obligated to cooperate—under China's National Intelligence Law—with CCP

authorities.”); *Attorney General Miyares Demands Answers About Online Retailer Temu's Business Practices and Chinese Communist Party Connections*, Office of the Attorney General of VA, https://perma.cc/VYE3-7M2V (investigating Temu's ties with the Chinese government and data collection and sharing practices); Hilal Aka, *The FTC's Amazon-Temu Blunder: Working With China to Target American Tech*, Aegis Insights (Jan. 31, 2025), https://perma.cc/2N97-NNN6 (addressing investigation into Temu's data practices). Plaintiff thus alleges that Temu is "operated and controlled by PDD Holdings Inc., a Chinese company with substantial operations and executive oversight in the People's Republic of China." (FAC ¶ 81.)

Defendants focus on PDD Holdings Inc.'s headquarters in Dublin. This does not exclude it from being a covered person, given that Plaintiff alleges it is a Chinese-founded company. (FAC ¶ 1); *see* 28 C.F.R. § 202.211(a). Indeed, PDD Holdings' Dublin office was recently raided by EU regulators concerned about Chinese influence. Foo Yun Chee & Helen Reid, *Temu's Dublin Office Raided by EU Regulators on Chinese Subsidy Concerns*, Reuters (Dec. 10, 2025), https://perma.cc/4PLQ-SNQC. Defendants point to "Whaleco, Inc." as a U.S. offshoot based in Boston. (Mem. at 15.) Whaleco, however, is not mentioned in the FAC at all. Nor are data transactions alleged to be limited within the U.S. or to any U.S. subsidiary.

## IV.    CONCLUSION

Defendants' motion to dismiss should be denied. Should the Court dismiss the FAC, Plaintiff respectfully requests leave to amend to correct any deficiencies. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 690 (7th Cir. 2004) ("[L]eave to amend should be freely given and only denied after a motion to dismiss where 'it appears to a certainty that the plaintiff cannot state a claim upon which relief can be granted[.]'").

Respectfully submitted,

**JOHN BAKER**, individually and on behalf of all others similarly situated,

Date: January 20, 2026

By: */s/ Michael W. Ovca*
One of Plaintiff's Attorneys

Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Attorney for Plaintiff and the putative Class*