# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JOHN BAKER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INDEX EXCHANGE INC., a Canadian Corporation, and INDEX EXCHANGE USA, LLC, a Michigan Limited Liability Company <br><br> Defendants. | Case No. 1:25-cv-10517 <br><br><br> Judge Matthew F. Kennelly <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| A. Plaintiff Cannot Meet His Jurisdictional Burden | 1 |
| 1. Plaintiff Has No Response to Defendants' Declaration Evidence | 1 |
| 2. Plaintiff's Speculative Allegations "On Information and Belief" Cannot Establish Jurisdiction | 4 |
| 3. Plaintiff Ignores the Required Due Process Analysis | 6 |
| B. The FAC Fails to State a Claim | 6 |
| 1. BibleGateway.com's Consent Defeats the ECPA Claim | 7 |
| 2. The Crime-Tort Exception Does Not Apply | 7 |
| a. Plaintiff's Vicarious Liability Theory is Conclusory and Misinterprets the BSD Rule's "Officer" Provision | 8 |
| b. Plaintiff's Alter-Ego Theory Fails Under Michigan and Illinois Law | 9 |
| 3. Plaintiff Has Not Plausibly Alleged that Temu is a "Covered Person" | 12 |
| 4. Without a BSD Rule Violation, the Crime-Tort Exception Does Not Apply | 13 |
| CONCLUSION | 14 |

**Page(s)**

**CASES**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...................................................................................3, 4, 6

*Am. Health Info. Mgmt. Ass'n v. Archetype Innovations, LLC*,
No. 23 C 3363, 2024 WL 2801651 (N.D. Ill. May 31, 2024) ...................................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................9

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) .....................................................................................2

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017)...................................................................................................6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...................................................................................................6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................................2

*Fontana v. TLD Builders, Inc.*,
362 Ill. App. 3d 491, 840 N.E.2d 767 (2005) .........................................................11

*Gledhill v. Fisher & Co.*,
272 Mich. 353, 262 N.W. 371 (1935).....................................................................9, 10

*Glenn v. TPI Petroleum, Inc.*,
305 Mich. App. 698, 854 N.W.2d 509 (2014) ........................................................9, 10

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
529 F.3d 371 (7th Cir. 2008) ...................................................................................11

*Medline Indus., Inc. v. Diversey, Inc.*,
No. 20 C 4424, 2020 WL 5763637 (N.D. Ill. Sept. 28, 2020)..................................5

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
623 F.3d 440 (7th Cir. 2010) .....................................................................................2

*Mutnick v. Clearview AI, Inc.*,
No. 20-cv-512, 2020 WL 4676667 (N.D. Ill. Aug. 12, 2020) ...................................4

*Nguyen v. Abbott Lab'ys, Inc.*,
No. 24-cv-8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ...................................7

**Page(s)**

*Payton v. Kale Realty, LLC*,
  No. 13-cv-8002, 2014 WL 4214917 (N.D. Ill. Aug. 26, 2014) ..................................................4

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ................................................................................................2, 5

*Q.J. v. PowerSchool Holdings, LLC*,
  No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ...............................................2, 3

*Seasword v. Hilti, Inc.*,
  449 Mich. 542, 537 N.W.2d 221 (1995) ..................................................................................10

*Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*,
  475 F.3d 783 (6th Cir. 2007) ...................................................................................................10

*Smith v. SMS Grp., Inc.*,
  No. 22-cv-1303, 2023 WL 3791718 (S.D. Ill. June 2, 2023) ....................................................4

*Stein v. Edward-Elmhurst Health*,
  No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ................................................13

*Thomas v. Khrawesh*,
  272 F. Supp. 3d 995 (E.D. Mich. 2017) ..................................................................................10

*uBID, Inc. v. GoDaddy Grp., Inc.*,
  623 F.3d 421 (7th Cir. 2010) ................................................................................................4, 5

*United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp.*,
  987 F.2d 39 (1st Cir. 1993) .......................................................................................................5

*United Insurance Group Agency, Inc. v. Patterson*,
  No. 299631, 2011 WL 5067251 (Mich. Ct. App. Oct. 25, 2011) ...........................................10

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...................................................................................................................3

*Zocco v. Nelnet, Inc.*,
  No. 25-cv-04470, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ................................................7

**STATUTES AND REGULATIONS**

18 U.S.C. § 2511(2)(d) ....................................................................................................1, 7, 13, 14

28 C.F.R. § 202.211 ....................................................................................................................12

28 C.F.R. § 202.256 ......................................................................................................................8

28 C.F.R. § 202.305(b)(1) ............................................................................................................8

28 C.F.R. § 202.401(a) ..................................................................................................................7

# INTRODUCTION

Plaintiff's opposition fails to remedy the jurisdictional and pleading defects in the First Amended Complaint ("FAC"). Plaintiff concedes that the Court lacks general jurisdiction over Defendants, and his arguments for specific jurisdiction rely on speculative allegations contradicted by Defendants' sworn declaration. As a result, Plaintiff has not made a prima facie showing of personal jurisdiction, and the Court should dismiss the FAC for this reason alone.

Even if the Court had jurisdiction, and even taking Plaintiff's factual allegations as true, the FAC fails to state a wiretapping claim under the Electronic Communications Privacy Act ("ECPA"). That law provides that it "shall not be unlawful" to intercept a communication "where one of the parties to the communication has given prior consent," 18 U.S.C. § 2511(2)(d), and Plaintiff does not dispute that third-party BibleGateway.com integrated Index Exchange's code into its site and thereby consented to the transmission of visitor data for advertising purposes. Instead, Plaintiff posits a speculative crime-tort theory under the Department of Justice's Bulk Sensitive Data Rule ("BSD Rule")—a theory that, to Defendants' knowledge, no court has ever adopted. Plaintiff's theory fails, and the ECPA's one-party consent rule defeats his claim.

Finally, because the defects in the FAC are legal, further factual amendment would serve no purpose. The Court should dismiss the FAC in full and with prejudice.

# ARGUMENT

## A. Plaintiff Cannot Meet His Jurisdictional Burden

### 1. Plaintiff Has No Response to Defendants' Declaration Evidence

"When challenged, the plaintiff has the burden of proving personal jurisdiction." *Am. Health Info. Mgmt. Ass'n v. Archetype Innovations, LLC*, No. 23 C 3363, 2024 WL 2801651, at *1 (N.D. Ill. May 31, 2024) (quoting *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018)). Plaintiff argues that the allegations in the FAC override Defendants' sworn

declaration evidence, but the rule in the Seventh Circuit is just the opposite: When a defendant submits a declaration "or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). The Court thus accepts as true "any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *Q.J. v. PowerSchool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *2–4 (N.D. Ill. Aug. 20, 2025) (rejecting "the bare allegations of the complaint" in light of defendant's sworn declaration that defendant "has no control over where its customers' website users might be found, and … made no effort to target Illinois or any other jurisdiction"). Defendants' undisputed evidence defeats personal jurisdiction:

First, neither Index Exchange Inc. ("Index Exchange") nor Index Exchange USA, LLC ("USA, LLC") is incorporated or has a principal place of business in Illinois (Declaration of Neil Dorken (Dkt. No. 32) ("Dorken Decl.") ¶¶ 2–4), and Plaintiff concedes there is no general jurisdiction. (Opp. at 3 n.1); *see Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). There is no basis for specific jurisdiction either, because Defendants have not purposefully targeted Illinois. Defendants have no "facilities, offices, or operations in Illinois" (Dorken Decl. ¶ 6), and thus Defendants have not "purposefully availed" themselves of the forum. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (national website accessible in Illinois insufficient for specific jurisdiction); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 446–47 (7th Cir. 2010) (same); *Q.J.*, 2025 WL 2410472, at *2–5 (same).

Plaintiff argues Defendants (1) contract with Illinois companies; (2) collect data of Illinois users; and (3) do not exclude Illinois' users data from the "bundle" of data they "sell to ad partners." (Opp. at 5). First, there is no allegation in the FAC as to any contract between Index Exchange and an Illinois company. The only facts the FAC alleges about Defendants' commercial

agreements are that the publisher of the BibleGateway.com website integrated Index Exchange's Software Development Kit (SDK) into its website code.[1]  (FAC ¶¶ 57 (Index Exchange's "integration on BibleGateway.com and related websites"); 59 ( "Index Exchange was integrated into BibleGateway.com"); 74 ("Index Exchange's JavaScript code" operates on websites such as BibleGateway.com)).  As Defendants showed in Mr. Dorken's declaration, the website's publisher is Harper Collins Christian Publishing, which is based in New York, not Illinois.  (Dorken Decl. ¶ 8).

Second, even if BibleGateway.com intercepted data from Illinois residents who visited the site, that conduct originates from a non-Illinois publisher's decision to use Index Exchange's supply side platform ("SSP") and from the Illinois visitors' conduct in navigating to the website, rather than from Defendants' conduct directed at Illinois.  *Cf. Q.J.*, 2025 WL 2410472, at \*4 (finding no specific jurisdiction where defendant "does not directly install software on end users' devices," but rather "that website operators—[defendant's] customers—integrate into their platforms").  Plaintiff's location cannot be "the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("[T]he operation of an interactive website does not show that the *defendant* has formed a contact with the forum state.  And, without the defendant's creating a sufficient connection (or 'minimum contacts') with the forum state itself, personal jurisdiction is not proper." (emphasis in original)).

Third, Index Exchange's RTB System receives webpage data only if a website publisher sends an advertising request when a visitor navigates to a page with advertising inventory.  (Dorken Decl. ¶¶ 9–11).  The RTB System's uniform operation nationwide, configured by publisher

---

[1] SDKs are software building tools that enable other developers to build applications more efficiently.  When Index Exchange provides its SDK, it does not build the resulting application.

partners with no Illinois-specific targeting, is precisely the incidental contact that courts in this Circuit hold inadequate for jurisdictional purposes. *See, e.g.*, *Advanced Tactical Ordnance*, 751 F.3d at 803 (no jurisdiction where conduct was nationally accessible but not aimed at forum). Were Plaintiff's argument adopted, any website using targeted advertising technology, and the providers of those technologies, would be subject to universal jurisdiction, which is not the law.

In contrast, all the cases relied upon by the Plaintiff are distinguishable, because the complaints in those cases alleged specific contracts that the defendant made in Illinois or advertising and messages the defendant sent to recipients in Illinois. *See Payton v. Kale Realty, LLC*, No. 13-cv-8002, 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014) (finding purposeful availment because of a contract with an Illinois corporation to send text messages into the State); *Mutnick v. Clearview AI, Inc.*, No. 20-cv-512, 2020 WL 4676667, at *2 (N.D. Ill. Aug. 12, 2020) (finding purposeful availment because defendants' databases came from companies in Illinois and defendants "executed hundreds of agreements" with Illinois government agencies and companies related to its accused product); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010) (finding defendant exploited the Illinois market by targeting advertisements at Illinois venues and customers). The FAC lacks any analogous factual allegations.

### 2. Plaintiff's Speculative Allegations "On Information and Belief" Cannot Establish Jurisdiction

Plaintiff speculates, without naming any individual, that "any Illinois-based employees who work with the RTB platform" would establish relevant contacts. (Opp. at 7). But allegations "on information and belief" cannot prove jurisdictional facts. *Smith v. SMS Grp., Inc.*, No. 22-cv-1303, 2023 WL 3791718, at *5 n.2 (S.D. Ill. June 2, 2023). What is more, these "information and belief" allegations do not allege any connection of these unnamed employees to receiving data from visitors to BibleGateway.com. (*See* FAC ¶ 17 ("On information and belief

4

these roles relate to and assist Defendants in the performance of its central business activity of operating their real-time bidding ('RTB') platform.")).  Additionally, Defendants' declaration evidence contradicts the allegation.  As noted above, Defendants have no Illinois offices or operations, and the job posting identified in the FAC was for a "hybrid" role listed through a third-party recruiting software intended to cast a wide net across the U.S.  (Dorken Decl. ¶¶ 6–7; Ex. A).

Jurisdictional discovery cannot cure these deficiencies where, as here, Plaintiff has not made a prima facie showing or shown an ambiguous factual record.  "The prima facie showing must be based upon evidence of specific facts set forth in the record." *United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir. 1993) (citation omitted); *Purdue*, 338 F.3d at 783 n.13; *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4 (N.D. Ill. Sept. 28, 2020) ("Generally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue.").  There is no factual ambiguity before the Court.  Plaintiff has made only vague allegations on "information and belief" that fail to allege Defendants targeted into Illinois the conduct about which he alleges an injury.  (*See* FAC ¶ 17 ("On further information and belief, Defendants have negotiated and entered into contracts in Illinois that are to be performed in Illinois related to the operating of their RTB platform.")).  Plaintiff's requests for discovery into Defendants' ties with Illinois-based publishers of websites he does not allege he visited, or its revenue from ads Plaintiff does not claim to have seen, do not address whether Defendants' alleged collection of data from *Plaintiff* was targeted into Illinois.  (Opp. at 10).  Plaintiff does not even allege that advertisements he saw on BibleGateway.com that Index Exchange's SDK caused to be displayed were targeted to Illinois residents, such as ads for Illinois products or services.  (*See* FAC ¶¶ 47–62); *cf. uBID*, 623 F.3d at 424 (finding specific jurisdiction because defendant's advertisements targeted Illinois).  Defendants, on the other hand, provided a sworn declaration as to the absence of Defendants' connections to Illinois.  (Dorken

Decl. ¶ 6). There is no factual ambiguity, and Plaintiff has not justified his request for jurisdictional discovery.

### 3. Plaintiff Ignores the Required Due Process Analysis

Even if Plaintiff could demonstrate minimum contacts—which he cannot—he still must show that exercising jurisdiction over Defendants in Illinois would be consistent with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). Plaintiff offers only the conclusory statement that Illinois has an interest in providing a forum for its residents. (Opp. at 9). Plaintiff ignores the substantial burden to Index Exchange, a Canadian corporation headquartered in Toronto (Dorken Decl. ¶ 3); the fact that USA, LLC does not develop or operate the SSP or code, and thus its conduct does not give rise to the claims as is required for specific jurisdiction (*id.* ¶ 5); and the risk of creating de facto nationwide jurisdiction from uniform nationwide conduct, which the Supreme Court forbids, *see Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 263–64 (2017).

Plaintiff also incorrectly suggests that Defendants bear the burden of identifying an alternative forum. (Opp. at 9). It is the Plaintiff's burden alone to justify the constitutionality of his chosen forum. *Advanced Tactical Ordnance*, 751 F.3d at 803–04. The Court should dismiss the FAC for lack of personal jurisdiction.

### B. The FAC Fails to State a Claim

Even if there were a basis for personal jurisdiction, the FAC fails to state a claim under Rule 12(b)(6). Plaintiff's ECPA claim is foreclosed by the statute's one-party consent rule, because BibleGateway.com—a party to the communications at issue—expressly consented to the alleged conduct. Plaintiff's sole basis for avoiding this complete defense is the unsupported and unprecedented argument that ECPA's narrow "crime-tort" exception applies, because Index Exchange's SDK violates the DOJ's BSD Rule. Plaintiff's FAC and his Opposition fail to show

plausible, factual allegations that Index Exchange Inc.—the non-U.S. entity that distributes the Index Exchange SDK and operates the Index Exchange SSP—is a U.S. person subject to the Rule, or that Temu is owned or controlled by the Chinese government.

### 1. BibleGateway.com's Consent Defeats the ECPA Claim

Plaintiff does not dispute that BibleGateway.com—a party to Plaintiff's alleged communications with its website—integrated Index Exchange's SDK into its website. (Dorken Decl. ¶ 9; FAC ¶¶ 49–50; Opp. at 5). Because BibleGateway.com consented to this alleged interception of Plaintiff's communications, Plaintiff's ECPA claim fails for this reason alone. *See, e.g.*, *Nguyen v. Abbott Lab'ys, Inc.*, No. 24-cv-8289, 2025 WL 2299753, at *4–6 (N.D. Ill. Aug. 8, 2025) (dismissing ECPA claim under one-party consent rule where plaintiff failed to establish crime-tort exception); *Zocco v. Nelnet, Inc.*, No. 25-cv-04470, 2026 WL 242037, at *4–6 (N.D. Cal. Jan. 29, 2026) (dismissing ECPA claim where plaintiff failed to allege sufficient facts under crime-tort exception).

### 2. The Crime-Tort Exception Does Not Apply

Plaintiff attempts to avoid the straightforward application of the ECPA's one-party consent rule by invoking its narrow "crime-tort" exception, arguing that Defendants knowingly transfer Americans' personal data to a company that is 50% or more owned by China's government. *See* 18 U.S.C. § 2511(2)(d) (exception if an interception is "for the purpose of committing any criminal or tortious act"). Plaintiff does not dispute that Index Exchange Inc., a Canadian company headquartered in Toronto, is not a U.S. person. (Dorken Decl. ¶¶ 2–3). This is dispositive, because only U.S. persons are subject to the BSD Rule. 28 C.F.R. § 202.401(a). To attempt to get around this fatal flaw in his theory, Plaintiff advances two arguments. First, he argues that U.S.-based decision makers who work at Index Exchange make the Canadian company vicariously liable for BSD Rule violations. Second, Plaintiff argues that USA, LLC is an "alter-ego" of Index Exchange

Inc. Both allegations lack factual support and misinterpret the "officer" provision of the BSD Rule.

### a. Plaintiff's Vicarious Liability Theory is Conclusory and Misinterprets the BSD Rule's "Officer" Provision

Plaintiff argues that unnamed "decisionmakers in the U.S." directed RTB operations in a manner that enabled data transfers to Temu. (Opp. at 11–12). He speculates with no support that Index Exchange's CEO works primarily from New York. Even assuming that were true, it has no legal consequence under the BSD Rule.

First, the "officer" provision Plaintiff invokes—28 C.F.R. § 202.305(b)(1)—does not transform a foreign company that is not subject to the BSD Rule into a "U.S. person" merely because one of its officers resides in the United States. By its plain terms, that provision applies to an officer or senior employee "at a foreign company that is not a covered person." *Id*. The provision makes clear that the individual officer is a "U.S. person" when "the foreign company undertakes a covered data transaction at that U.S. person's direction or with that U.S. person's approval when the covered data transaction would be prohibited if performed by a U.S. person." 28 C.F.R. § 202.305(b)(1). The rule targets the U.S. individual who "has knowingly directed a prohibited transaction," not the foreign company itself. 28 C.F.R. § 202.305(b)(1). This textual structure confirms that the foreign company remains a non-U.S. person; the jurisdiction of the BSD Rule is tethered to the U.S. individual's conduct, not to the corporation's home country. *See* 28 C.F.R. § 202.256 (defining "U.S. person"); 28 C.F.R. § 202.305(b) (describing conduct of U.S. persons working for foreign companies). Plaintiff's theory collapses this distinction.

Second, none of Defendants' officers is a named defendant in this case, and the FAC pleads no facts permitting a plausible inference that Index Exchange's CEO—or any other unidentified officers residing in the United States—directed or approved the transfer of U.S. citizens' data to a

Chinese government-controlled organization. Plaintiff simply assumes that because some officers may be located in the United States, they must be directing prohibited transactions to one of many advertisers that work with Index Exchange. This is precisely the type of conclusory assertion that fails the Rule 12 standard. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plaintiff alleges no specific transaction, date, communication, approval process, or decision linking any U.S.-based officer to the knowing transfer of data to Temu. Plaintiff also offers nothing to contradict the limited role of USA, LLC. (Dorken Decl. ¶ 5).

> **b. Plaintiff's Alter-Ego Theory Fails Under Michigan and Illinois Law**

Plaintiff next argues that the Court should treat Index Exchange and USA, LLC as a single entity under an "alter ego" theory, but this argument also fails. First, Plaintiff's theory requires the Court to impute the domestic status of a U.S. subsidiary upward to its foreign parent company. Both Michigan and Illinois reject this "reverse" alter-ego theory, which flips on its head a doctrine used to hold a controlling parent liable for the acts of its subsidiary.

Under Michigan law, alter-ego liability requires the plaintiff to establish (1) that the corporation is a mere instrumentality of another, (2) that the corporation was used to commit a fraud or wrong, and (3) that misuse of the corporate form caused an unjust loss. *Gledhill v. Fisher & Co.*, 272 Mich. 353, 357–59, 262 N.W. 371 (1935). On the first prong, Plaintiff alleges that Index Exchange and USA, LLC have overlapping headquarters, executives, and business operations. (FAC ¶¶ 19–22, 80; Opp. at 13). Yet overlap alone does not demonstrate domination or control of day-to-day decision-making or that USA, LLC lacks a separate corporate existence. *Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 717, 854 N.W.2d 509, 520 (2014) ("While a corporate address may be shared, there is no evidence to indicate that separate corporate formalities

have not been maintained."); *Seasword v. Hilti, Inc.*, 449 Mich. 542, 549, 537 N.W.2d 221, 225 (1995) (finding "plaintiff has alleged no facts, nor offered any proof" of an abuse of "presumably separate and distinct corporate forms"). Further, the unrebutted evidence is that USA, LLC does not develop or operate the SSP or publisher code but is limited to employing U.S. staff and signing leases. (Dorken Decl. ¶ 5).[2]

On the second prong, Plaintiff claims Index Exchange used USA, LLC "as its American outpost" to commit the alleged BSD Rule and ECPA violations. (FAC ¶ 80; Opp. at 13). But the cited allegations (FAC ¶¶ 72–92) contain no specific facts showing fraudulent intent, misuse of corporate form, or wrongdoing independent of the underlying claims. *See, e.g.*, *Glenn*, 305 Mich. App. at 716. Plaintiff's only case, *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783 (6th Cir. 2007), is therefore inapposite because that case concerned an express contract between the plaintiff and the alleged alter ego, and the court held it would be improper to prevent the plaintiff's recovery against the defendant. *Id.* at 800. The FAC includes no analogous facts.

And on the third prong, Plaintiff alleges only the inability to classify Index Exchange as a "U.S. person" in this litigation. (FAC ¶ 80). That is not the type of substantive injustice recognized under Michigan law. *Gledhill*, 272 Mich. at 357–59. For example, in Plaintiff's cited case, *Thomas v. Khrawesh*, 272 F. Supp. 3d 995 (E.D. Mich. 2017), the plaintiff was permitted to pierce the corporate veil because the defendant dissolved his corporation and liquidated its assets to prevent plaintiff from collecting a default judgment awarded in a previous lawsuit. *Id*. at 998–99, 1003. The FAC does not, and cannot, identify any "unjust injury."

---

[2] Plaintiff relies on *United Insurance Group Agency, Inc. v. Patterson*, No. 299631, 2011 WL 5067251 (Mich. Ct. App. Oct. 25, 2011), but it also supports Defendants' argument. The court there held that the plaintiff failed to make a prima facie case that the subsidiaries were mere instrumentalities of the defendant because the plaintiff identified no evidence showing an active role in the day-to-day decision making at the subsidiary.

Plaintiff's theory fails under Illinois law for the same reasons. (*See* Opp. at 13 n.5 (conceding that Michigan law applies and presenting no new arguments under Illinois law)). Illinois applies a two-part test requiring (1) such unity of interest and ownership that the separate personalities of the corporation and affiliated entity no longer exist, and (2) that respecting corporate separateness would sanction fraud or promote injustice. *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 503–08, 840 N.E.2d 767 (2005). At the first prong, Plaintiff offers only conclusory statements about shared headquarters and executives (FAC ¶¶ 19–22, Opp. at 13), but alleges no facts about commingling of funds, undercapitalization, failure to maintain corporate records, or other recognized hallmarks under Illinois precedent. *See Fontana*, 362 Ill. App. 3d at 503; *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379–80 (7th Cir. 2008).

At the second prong, Plaintiff's theory mirrors his flawed Michigan analysis: the claimed "injustice" is simply the inability to classify Index Exchange as a "U.S. person" under the BSD Rule. (FAC ¶ 80; Opp. at 13). Veil-piercing is an extraordinary remedy reserved for situations where the corporate form itself is wielded to perpetrate fraud or wrongdoing. *Fontana*, 362 Ill. App. 3d at 508 (finding second prong satisfied where contractor caused his company to be "incorporated and placed nominal ownership and control solely in the hands of [his wife] for the purpose of shielding himself personally from the liabilities to which his general contracting activities might expose him").

Plaintiff has not alleged sufficient facts to plead Index Exchange Inc. is the alter ego of Index Exchange USA, LLC beyond the allegations of sharing some similar office spaces and the conclusory allegations of sharing executives and funds. These conclusory allegations are insufficient to plead alter ego status, or that Index Exchange Inc. acts as the instrumentality of USA, LLC.

### 3. Plaintiff Has Not Plausibly Alleged that Temu is a "Covered Person"

Plaintiff's opposition leans heavily on external media reports, attorney general press releases, and generalized assertions that Temu has "ties to China." (Opp. at 14–15). But Plaintiff's boilerplate references do not lead to a plausible inference that China's government owns or controls 50% or more of Temu, as required by 28 C.F.R. § 202.211. To the contrary, the unrebutted Newby Declaration shows that Temu's U.S. operations are conducted through Whaleco, Inc., a Delaware corporation registered in Massachusetts, and that Whaleco is identified in federal litigation as the U.S. entity operating Temu. (Declaration of Tyler Newby (Dkt. No. 31) ("Newby Decl.")) ¶¶ 2– 5; Exs. A, D). Whaleco officers sign agreements on behalf of "Whaleco, Inc., d/b/a Temu" (*id.* ¶ 3; Ex. B), and execute Whaleco's Massachusetts corporate filings (*id.* ¶ 4; Ex. C).

Plaintiff offers no factual allegations tying Whaleco's ownership or management structure to China or any other country of concern within the meaning of § 202.211, let alone satisfying the Rule's 50%-ownership threshold. As support for this allegation, Plaintiff points to several editorials and state attorney general letters. (FAC ¶ 81, Opp. at 14). But none of those press clippings and state attorney general letters allege that China's government owns 50% or any percentage at all of Temu. For example:

- The article by Diane Rinaldo, *Looking Beyond TikTok: The Risks of Temu*, Center for Strategic & International Studies (Oct. 24, 2024) (FAC ¶ 81, Opp. at 14), does not allege that Temu is 50% or more owned by China's government. At most, it claims that as an ultimate subsidiary of a China-domiciled company, Temu must comply with China's National Intelligence Law, and that it "does business with" a company controlled by China's Communist Party. (Reply Declaration of Tyler Newby ("Newby Reply Decl."), Ex. A). "Doing business with" a company owned by a government does not satisfy the BSD Rule's 50% ownership or control requirement.

- The press release and letter, *Attorney General Miyares Demands Answers About Online Retailer Temu's Business Practices and Chinese Communist Party Connections*, Office of the Attorney General of VA (FAC ¶ 81, Opp. 15), similarly does not allege government ownership of 50% of Temu or any other percentage. It refers to a coalition of state attorneys general "demanding answers" from Temu about "alleged ties with the Chinese Communist Party" and the sale of products allegedly manufactured by forced labor. It does not allege any ownership but asks questions about whether Temu has disclosed user data to China's government. (Newby Reply Decl. Ex. B).

- The editorial by Hilal Aka, *The FTC's Amazon-Temu Blunder: Working With China to Target American Tech*, Aegis Insights (Jan. 31, 2025) (FAC ¶ 81, Opp. 15) similarly makes no mention of Chinese government ownership or control of Temu. At most it describes Temu as "linked" to China's Communist Party and cites the Diane Rinaldo article described above as its sole support for that linkage. (Newby Reply Decl. Ex. C). Neither the Rinaldo article nor the Aka editorial allege or provide any support for the argument that China's Communist Party has any ownership interest or control of Temu.

These third parties' vague allegations of "ties," "links," and "data sharing" between Temu and China's government do not create a plausible inference that Temu is a "covered person" under the BSD Rule.

### 4. Without a BSD Rule Violation, the Crime-Tort Exception Does Not Apply

There is no predicate for a "criminal or tortious" purpose under the ECPA's crime-tort exception. *See* 18 U.S.C. § 2511(2)(d); *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025) (exception applies only if interception was undertaken for the purpose of committing an independent criminal or tortious act). As a result, Plaintiff's

ECPA claim fails at its first step: BibleGateway.com consented to send the disputed data to Index Exchange by integrating its SSP code into its site, and that consent is dispositive. 18 U.S.C. § 2511(2)(d). Plaintiff has no response, and his ECPA claim must be dismissed.

**CONCLUSION**

For all these reasons, and because the deficiencies in the FAC are incurable, the Court should dismiss the FAC with prejudice.

<div align="center" style="margin-left:auto;margin-right:0;">

Respectfully submitted,

</div>

Dated:  February 3, 2026          FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby (Admitted *Pro Hac Vice*)
tnewby@fenwick.com
Samantha Cox-Parra (Admitted *Pro Hac Vice*)
scox-parra@fenwick.com
**FENWICK & WEST LLP**
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone:  (415) 875-2495

Noah Solowiejczyk (Admitted *Pro Hac Vice*)
nsolowiejczyk@fenwick.com
**FENWICK & WEST LLP**
902 Broadway, 18th Floor
New York, NY 10010
Telephone:  (212) 430-2600

Joan Liu-Kim (Admitted *Pro Hac Vice*)
joanieliu-kim@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041-1990
Telephone:  (650) 988-8500

Steven P. Mandell
smandell@mandellpc.com
Bryan G. Lesser
blesser@mandellpc.com
**MANDELL P.C.**
1 North Franklin Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 215-1001

Attorneys for Defendants
INDEX EXCHANGE INC
INDEX EXCHANGE USA, LLC