**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN BAKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INDEX EXCHANGE INC., a Canadian Corporation, and INDEX EXCHANGE USA, LLC, a Michigan Limited Liability Company<br><br>Defendants. | Case No. 1:25-cv-10517<br><br>Judge Matthew F. Kennelly<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## INTRODUCTION AND BACKGROUND

Plaintiff's motion to compel is an effort to get merits discovery under the guise of jurisdictional discovery in opposition to Defendants' motion to dismiss the First Amended Complaint ("FAC"). Plaintiff is an Illinois resident whose allegations in this case arise from his interactions with a single website, BibleGateway.com, which is published by a company outside of Illinois. (Dkt. 32 (Declaration of Neil Dorken in Support of Motion to Dismiss First Amended Complaint ("Dorken Decl.")) ¶ 8; Dkt. 26 (FAC) ¶¶ 47–62.) Defendant Index Exchange Inc. provides internet advertising technology services to BibleGateway.com and is also based outside of Illinois, as is its affiliate, Index Exchange USA, LLC. (*See* Dkt. 30 (Memo. in Support of Defendants' Motion to Dismiss ("MTD")) at 2.) Plaintiff's only alleged contact with Defendants occurred because BibleGateway.com's publisher incorporated Index Exchange's code on its website, causing Index Exchange to send data about Plaintiff's visit to the site to demand-side platforms ("DSPs") so that an advertisement would be displayed. (FAC ¶¶ 47–50; *see* Dorken Decl. ¶ 9–11.) While Plaintiff happened to be in Illinois, these actions happen regardless of where a visitor to BibleGateway.com is located. Defendants moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(2), and alternatively, 12(b)(6). (*See* MTD.) Although the Court permitted jurisdictional discovery (Dkt. 54), Plaintiff issued sweeping discovery that goes well beyond what is necessary to determine whether this Court has personal jurisdiction.

Background on Index Exchange's role in open real-time bidding ("RTB") internet advertising helps to explain why Plaintiff's remaining document requests do not bear on specific jurisdiction. OpenRTB is an automated process in which publishers of online content, like a website, use a standardized protocol allowing for auctions that sell online advertising space, conducted within milliseconds of when an individual opens a webpage. (*See, e.g.*, FAC ¶ 44; Dkt. 55 (Motion to Compel ("Mot.")) at 1.) Index Exchange Inc.'s supply-side platform ("SSP") makes

up one part of that OpenRTB process. (Dorken Decl. ¶ 5.) Through its SSP, Index Exchange makes it possible for publishers, like the operator of the BibleGateway.com site, to solicit and receive bids from demand-side platforms that wish to deliver ads to consumers. (Dorken Decl. ¶ 10; MTD at 2.) When a publisher uses Index Exchange's SSP, the website publisher integrates Index Exchange's code into its website code. (Dorken Decl. ¶ 9.) The publisher then configures its sites to make its ad space available on Index Exchange's SSP. (*Id.*) It is only after the publisher configures its website that Index Exchange receives data from the website to generate a bid request to send to DSPs. (*Id.*; FAC ¶¶ 23–30.)

The FAC pleads a single cause of action, alleging that Defendants illegally wiretapped him by sending information about his visit to BibleGateway.com in advertising bid requests to Temu. Recognizing that "interceptions" of electronic communications that a party to the communication authorizes—in this case, BibleGateway.com's publisher—do not violate ECPA in most circumstances, Plaintiff frames his case around ECPA's unlawful or tortious conduct exception to party authorization. The unlawful conduct, Plaintiff claims, is a violation of the U.S. Department of Justice's Bulk Sensitive Data Rule ("BSD Rule"), because he alleges Temu is more than 50% owned by China's government. The FAC does not challenge the operation of Index Exchange's SSP for all websites or its role in enabling those websites to sell an advertising space to all advertisers; it instead bases its claim on alleged transfers to a single company: Temu. (FAC ¶ 6.)

Defendants have responded to Plaintiff's discovery requests that are properly directed toward specific jurisdiction for this claim, and there is no pending dispute as to most of the requests propounded by Plaintiff. (*See* Dkt. 55-3 at 466–67.) Defendants have produced:

- The data fields Index Exchange's SSP sends in bid requests to potential advertisers when a person visits BibleGateway.com;

- The types of data that can be included in bid requests by sellers of digital advertising space and DSPs;
- Job descriptions of remote employees who currently work in Illinois;
- Recruitment job listings for workers who may work remotely from Chicago;
- Formation documents for Index Exchange USA, LLC; and
- Inter-company agreements between Index Exchange Inc. and Index Exchange USA, LLC.

Additionally, after Plaintiff filed the motion to compel, Defendants agreed to produce the following additional categories of data that could bear on its connections to Illinois:

- Documents sufficient to show Illinois-based website publishers that contract with Index Exchange to use its internet advertising SSP (Request for Production 18);
- Documents sufficient to show Illinois-based DSPs to which Index Exchange has sent bid requests through its SSP (a category of Request for Production 16); and
- Revenues Index Exchange has received from Illinois-based publishers that use Index Exchange's SSP for real-time bidding internet advertising.

(*See* Declaration of Tyler Newby in Support of Defendants' Opposition ("Newby Decl.") ¶ 2, Ex. 1; *see also* Dkt. 55-1 (Plaintiff's RFPs and Defendants' Responses) at 443, 445–46.) These documents will provide sufficient information for the Court to determine whether Index Exchange has purposefully directed conduct at Illinois and, if so, whether that conduct is related to Plaintiff's claims and the exercise of jurisdiction is fair. *See B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (stating factors for specific jurisdiction analysis).

The data Plaintiff seeks in the disputed document requests is not proportionate or even relevant to the specific jurisdiction analysis. Instead, Plaintiff seeks broad discovery directed

toward Index Exchange's contacts with unrelated websites, non-party Illinoisans, and advertisers that have no alleged ownership by China's government. (*See* Dkt. 55-1.) Request 14 requests "all third parties" involved in "determining fine or coarse geolocation for a user, device, ad impression, ad inventory, or data used in or generated by" Index Exchange's SSP, regardless of those third parties' connections to Illinois. (*Id.* at 440.) Request 15 builds on Request 14, seeking "data fields exchanged as part of the commercial relationships" with the third parties identified in Request 14. (*Id.* at 441.) On their face, these requests are not tied to conduct directed at Illinois. Index Exchange has agreed to produce data sufficient to identify Illinois-based DSPs that have received bid requests sent by Index Exchange's SSP, which is more tailored to whether Index Exchange has targeted conduct at Illinois. (Newby Decl. Ex. 1.)

While Requests 17 and 19–21 mention Illinois, they also do not seek data showing that Index Exchange targets Illinois residents. Instead, they seek data that Index Exchange *receives* from visitors to websites other than BibleGateway.com that use Index Exchange's advertising software. (Dkt. 55-1 at 444, 446–449.) As explained below, this data does not show purposeful direction by Index Exchange.

## ARGUMENT

### A. Plaintiff's Discovery Requests Exceed the Scope of Jurisdictional Discovery

Specific jurisdiction requires proof of: (1) Purposeful availment: "the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum"; (2) Relatedness: "the alleged injury must arise out of or relate to the defendant's forum-related activities"; and (3) Fairness: "the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by & through Myer*, 91 F.4th at 861. The requested discovery will not sufficiently inform the analysis under any of these three requirements, and Plaintiff's motion should thus be denied.

### 1. The requested data do not address purposeful availment.

Evidence showing the number of Illinois residents whose data was sent in bid requests by Index Exchange's SSP, the number of those requests, and revenue Index Exchange received from those requests does not show purposeful availment of Illinois. To satisfy the purposeful availment requirement for specific jurisdiction, the "defendant must in some way *target* the forum state's market." *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (emphasis in original); *see also Gullen v. Facebook*, No. 15-cv-7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (allegations that defendant collected data from Illinois residents over the internet were insufficient to establish personal jurisdiction because defendant did not "target" data collection at Illinois residents specifically). Plaintiff argues that data showing the number of Illinois residents whose data was transmitted by Index Exchange's SSP in bid requests and the money Defendants earned from those requests "tends to show that Defendant purposefully set up its business to exploit the Illinois market." (Mot. at 9.) Not so. The bid request data does not show targeting by Index Exchange; it merely shows metrics around Index Exchange's *receipt* of data from Illinois residents who visited third-party websites that use Index Exchanges' SSP.

Mere receipt and processing of information from Illinois residents' visits to websites that use Index Exchange's SSP does not show Index Exchange's purposeful direction of conduct to Illinois. In *be2*, the Seventh Circuit found no purposeful availment where the defendant was only connected to the forum through a national website that was also accessible in Illinois. *be2*, 642 F.3d at 559. Although 20 Illinois residents had accounts on defendant's website, the record suggested that those residents made their profiles unilaterally, rather than on account of defendant "deliberately target[ing]" the Illinois market. *Id.* Likewise, here, data showing how many Illinois residents visit websites that use the Index Exchange SSP does not answer the question of whether Defendants targeted Illinois. Index Exchange's role in the RTB process does not depend on where

the visitor happens to be located. (Dorken Decl. ¶¶ 9–11; *see* FAC ¶¶ 47–50.) Its contacts with Illinois through its processing of bids to place ads on partners' websites when Illinois residents visit them are "random, isolated, or fortuitous," which are not sufficient to establish specific jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

At most, the third-party websites that receive visits from Illinois residents or the advertisers that place ads on those sites target Illinois. But personal jurisdiction must arise from the Defendants' contacts with the forum, not third parties' contacts. For example, in *Redd v. Amazon Web Services, Inc.*, there was no personal jurisdiction over AWS because, aside from its state business registration, "the only alleged link between AWS and Illinois" ran through a third-party application integrating the AWS technology that formed the basis for plaintiff's claims. 673 F. Supp. 3d 943, 946 (N.D. Ill. 2023). The plaintiff could not establish jurisdiction merely because the third party "then used that technology in Illinois." *Id.* at 946–47.

Plaintiff's authorities are distinguishable because each involved entities that purposefully targeted the forum state. In *Ford*, a product liability case involving Ford automobiles sold into the forum, purposeful availment was not in dispute. 592 U.S. at 365. Ford "work[ed] hard to foster ongoing connections to its cars' owners" through in-state dealers, directing its products and services directly into the relevant venues. *Id.* But here, the number of Illinois visitors to websites that use Index Exchange's SSP will reveal nothing about whether Defendants direct products and services directly into Illinois. Similarly, in *uBID, Inc. v. GoDaddy Grp., Inc.*, the defendant targeted a "marketing campaign" at Illinois venues and customers. 623 F.3d 421, 424 (7th Cir. 2010). Again, metrics of Illinois visitors to third party websites that use Index Exchange's SSP will not show Defendants' targeting of any activities toward those visitors. *Illinois v. Hemi* is likewise distinguishable. 622 F.3d 754 (7th Cir. 2010). There, the defendant sold hundreds of

product units directly to customers in Illinois. *Id.* at 758. The metrics Plaintiff seeks will not show sales of any products or services to Illinois.

**2. The requested data would not establish relatedness.**

Plaintiff seeks to establish jurisdiction by seeking information relating to Defendants' contacts with Illinoisians other than himself. But such efforts must fail. "[I]n a putative class action, the specific jurisdiction inquiry is evaluated with respect to the named plaintiffs" only, without regard to absent class members. *Batton v. Nat'l Ass'n of Realtors*, No. 21-cv-430, 2024 WL 689989, at *12 (N.D. Ill. Feb. 20, 2024) (citing *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445, 448 (7th Cir. 2020)); *Debernardis v. Metabolic Nutrition, Inc.*, No. 15-cv-10808, 2016 WL 11940707, at *7 (N.D. Ill. Dec. 6, 2016) (same); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) (collecting cases).

*Debernardis* is particularly instructive. There, the court rejected a plaintiff's attempt to establish jurisdiction through the defendants' sales to other Illinois residents via defendants' website, because those sales could impact jurisdiction only as to the absent class members, but not the named plaintiff. *Debernardis*, 2016 WL 11940707, at *7. The court explained that even if the defendants' website established contacts with the absent class members, the named plaintiff—whose claims relied on an unrelated website—could not "impute Defendant's contacts with other Illinois residents … to himself." *Id.* The named plaintiff was thus unable to establish specific personal jurisdiction, and the court granted defendants' motion to dismiss for lack of personal jurisdiction. *Id.*

Like in *Debernardis*, here, Plaintiff seeks to establish jurisdiction through information relating to contacts with other parties rather than himself. Plaintiff seeks documents sufficient to identify "data fields," "third parties," "geographic location" data, "publishers," "Bid Requests," and "[visitor] data" associated with sites he does not claim to have visited. (*See* Dkt. 55-1

(Plaintiff's RFPs).) Such information, even if provided, will not address the question of whether *Plaintiff's* claim is related to the Defendants' forum directed contacts. Plaintiff's claims arise out of his visits to BibleGateway.com—a website published by HarperCollins Publishers in New York (Dorken Decl. ¶ 8)—and advertisements placed by Temu, whose parent is based in Massachusetts. Even if the documents that Plaintiff has requested exist, they could, at most, suggest Defendants' contacts with other absent class members residing in Illinois concerning other websites having nothing to do with sending advertising bid request data to Temu. Plaintiff cannot impute these hypothetical contacts to himself for purposes of specific personal jurisdiction. *See Debernardis*, 2016 WL 11940707, at *7.

Plaintiff attempts to distinguish *Debernardis* and *Greene* because they were decided before *Ford*. But nothing in *Ford* impacted Seventh Circuit law, and indeed both *Debernardis* and *Greene* expressly cite to the "more expansive" relatedness test affirmed in *Ford* and recited in *uBid*. *See Debernardis*, 2016 WL 11940707, at *6 (citing *uBid*, 623 F.3d at 430); *Greene*, 169 F. Supp. 3d at 865 (rejecting specific jurisdiction based on defendant's lack of "suit-related conduct" in Illinois). As the Supreme Court explained in *Ford*, the relatedness test "does not mean anything goes." 592 U.S. at 362. Rather, "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* Thus, just like the plaintiff in *Debernardis*, Plaintiff cannot establish jurisdiction through websites that are different from the one he visited or bid requests sent to advertisers other than Temu. *See Debernardis*, 2016 WL 11940707, at *7.

Plaintiff attempts to obscure this comparison by stating that his requests for data related to other Illinois-based entities are "tied to the same RTB process that gave rise to his claims." (Mot. at 8.) But the court rejected a materially similar argument in *Debernardis*, where the plaintiff tried to point to other Illinois residents' purchases of the same dietary product. *Debernardis*, 2016 WL

11940707, at *7. Similarly, Plaintiff's requests exceed the scope of jurisdictional discovery because Index Exchange's unrelated forum-related activities are irrelevant to Baker's claims. What is more, the FAC does not allege that Defendant's role in the RTB process for all advertisers violates ECPA. Instead, Plaintiff alleges that sending data to Temu violates ECPA by violating the BSD Rule. Plaintiff's requests for data unrelated to Temu therefore seek data that is not related to his claim, and Defendants have already produced what is relevant. Index Exchange produced a spreadsheet showing a sample of data types included in slot requests and bid requests for BibleGateway.com, the only site Baker claims to have visited. (*See* Dkt. 55-3 at 468.) And although there is no standard form bid request because their contents vary from request to request, Index Exchange also produced documents sufficient to show the types of data that can be included in these requests by both sellers of digital advertising space and DSPs. (*See id.*)

**3. Plaintiff does not seek data that would establish fairness.**

Data showing bid request metrics of visitors to the third-party websites that use Index Exchange's SSP also would not bear on fairness. The exercise of personal jurisdiction must "comport with traditional notions of fair play and substantial justice." *B.D. by & through Myer*, 91 F.4th at 861. The fairness inquiry offers "a guarantee of immunity from inconvenient or distant litigation" that recognizes the "territorial limitations on the power of the respective States." *Bristol-Myers Squibb Co. v. Super. Ct. Cal. San Francisco Cnty.*, 582 U.S. 255, 263 (2017) (citation omitted). The Seventh Circuit has held that operation of a mere website "should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible," because "[t]o hold otherwise would offend traditional notions of fair play and substantial justice." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (citations omitted). Likewise, requiring Index Exchange to litigate in a forum simply because third party website publishers that use its SSP receive visitors from

Illinois would be unfair and would subject Defendants to jurisdiction in every state where its website publisher customers receive visitors. *See be2*, 642 F.3d at 559 (finding that "attenuated contacts" with 20 website users in Illinois "could not give rise to personal jurisdiction without offending traditional notions of fair play and substantial justice").

### B. Index Exchange Properly and Specifically Objected to Plaintiff's Discovery Requests

Defendants did not assert solely boilerplate objections, and in any event, did not withhold documents on that basis other than its core objection that the requests seek data and documents that are not proportionate to jurisdictional discovery. Discovery objections are "boilerplate" and improper when they merely state that a request is "overly broad, unduly burdensome, irrelevant, vague, or beyond the scope of the case" while "failing to state *with specificity* the grounds and reasons for objecting." *CSI Worldwide, LLC v. Trumpf, Inc.*, No. 18-cv-5900, 2022 WL 22974447, at *2 (N.D. Ill. Aug. 9, 2022) (emphasis in original); *see* Fed. R. Civ. Pro. 34(b)(2)(B).

Here, Index Exchange provided specific objections to Plaintiff's discovery requests that remain in dispute, including, critically, that the requests exceed the proper scope of jurisdictional discovery. (*See* Dkt. 55-1 at 443, 445, 447–50.) Index Exchange provided further detail during the meet-and-confer process, including detailed caselaw explaining why Plaintiff's requests are improper. (*See* Dkt. 55-3.) Index Exchange's objections properly informed Plaintiff that his requests exceed the Court's allowance for targeted jurisdictional discovery.

Plaintiff's cited cases are inapposite and do nothing to change this conclusion. None of them involved objections lodged against jurisdictional discovery requests, and they are distinguishable on this basis alone. *See Kane v. Loyola Univ. of Chicago*, No. 22-cv-6476, 2025 WL 4051934, at *1 (N.D. Ill. Dec. 29, 2025) (damages discovery); *Saleh v. Pfister*, No. 18-cv-1812, 2020 WL 4365641, at *1 (N.D. Ill. July 30, 2020) (merits discovery); *CSI Worldwide*, 2022

WL 22974447, at *1 (merits discovery). Moreover, two of Plaintiff's cited cases contain no substantive analysis at all concerning the meaning of a "boilerplate" objection. *See Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21-cv-6890, 2025 WL 890640, at *1 (N.D. Ill. Jan. 27, 2025); *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 160 (N.D. Ill. 2017). In all events, Index Exchange has withheld no documents based on the overbreadth of Plaintiff's definitions.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to compel.

Dated: April 6, 2026

Respectfully submitted,

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*

Tyler G. Newby (Admitted *Pro Hac Vice*)
tnewby@fenwick.com
Samantha Cox-Parra (Admitted *Pro Hac Vice*)
scox-parra@fenwick.com
**FENWICK & WEST LLP**
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415-875-2300

Noah Solowiejczyk (Admitted *Pro Hac Vice*)
nsolowiejczyk@fenwick.com
**FENWICK & WEST LLP**
902 Broadway, 18th Fl.,
New York, NY 10010
Telephone: 212-430-2600

Joan Liu-Kim (Admitted *Pro Hac Vice*)
joanieliu-kim@fenwick.com
**FENWICK & WEST LLP**
801 California Street,
Mountain View, CA 94041-1990

Steven P. Mandell
smandell@mandellpc.com
Bryan G. Lesser
blesser@mandellpc.com
**MANDELL P.C.**
1 North Franklin Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 215-1001

Attorneys for Defendants
*Index Exchange Inc.* and
*Index Exchange USA, LLC*