**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JOHN BAKER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>INDEX EXCHANGE INC. and INDEX EXCHANGE USA, LLC,<br><br>*Defendants*. | Case No. 1:25-cv-10517<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Defendants Index Exchange Inc. ("Index Exchange") and Index Exchange USA, LLC ("IE USA," together with Index Exchange, "Defendants") operate a nationwide advertising exchange that solicits and sells advertising slots to be shown on partner websites and apps (the "RTB System"). (Dkt. 26, the First Amended Complaint ("FAC")). As part of its operation, Defendants' RTB System collects sensitive information about the users of those websites and apps, including their IP address, the specific websites they visit, and their inferred location. (*Id.* ¶ 24.) Plaintiff, an Illinoisian, alleges he had his geolocation and other identifying data collected and shared through Defendants' RTB System. (*Id.* ¶¶ 13, 47–61.) On behalf of himself and a class of similarly situated individuals, he filed this suit against Defendants related to the data they collected and distributed through such contacts with the RTB System. (*See id.* ¶ 63.) Notwithstanding the connection between the Defendants, the claims, and the forum, Defendants filed a motion to dismiss arguing that they are not subject to specific personal jurisdiction in Illinois. (Dkt. 30 at 1, the "MTD.") After Plaintiff filed his opposition (dkt. 44, the "Opp."), the Court allowed Plaintiff to take jurisdictional discovery, (dkt. 54).

That discovery has confirmed key arguments and facts raised in the Opposition and the FAC. The factual record reflects that Defendants' RTB System collects Illinois-specific data from users; transmits that data to third parties—including Temu, the China-connected entity that forms the basis of Plaintiff's Bulk Sensitive Data rule claims; earns revenue from selling ad placements to Illinoisans; and delivers ad impressions (instances when one views a given ad spot) to Illinoisans on a massive scale—[redacted] Additional facts tie each Defendant to the forum and the challenged conduct. Index Exchange [redacted]

[redacted] These contracts earned Index Exchange [redacted] With respect to IE USA, which is registered to do business in Illinois, the company is contractually obligated [redacted] IE USA is also the employer of record for *all* of Index Exchange's United-States-based employees. This includes three who are physically located in Illinois, and whose work revolves around ad sales regarding the RTB System.

Taken together, Defendants cannot with a straight face claim they have not "purposefully availed [themselves] of the privilege of conducting business in the forum[,]" that the claims are unrelated to those forum connections, nor that it would be unfair for them to proceed in this Court. *See B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024). For the reasons set forth in the Opposition and supported by this supplemental brief, Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

## II. ARGUMENT

"Where, as here, the parties engaged in jurisdictional discovery, but the district court did not hold an evidentiary hearing before resolving a Rule 12(b)(2) motion, the plaintiff must make only a prima facie case for personal jurisdiction." *B.D. by & through Myers v. Samsung SDI Co.*, 143 F.4th 757, 762 (7th Cir. 2025); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (same, drawing distinction between deciding jurisdictional motion on the basis of written submissions versus holding an evidentiary hearing). The facts adduced during jurisdictional discovery establish that Plaintiff has cleared this low bar. *Guaranteed Rate,*

*Inc. v. Rorvig*, 22 CV 2342, 2022 WL 4182436, at *5 (N.D. Ill. Sept. 13, 2022) (recognizing that "the standard for a prima facie case for jurisdiction is low"). Specifically, those facts demonstrate jurisdiction is proper under each of the relevant prongs in the jurisdictional analysis: purposeful availment, relatedness, and fairness. *See B.D. by & through Myer*, 91 F.4th at 861.

**A. Defendants Purposefully Availed Themselves of the Privilege of Doing Business in Illinois.**

The first prong asks whether the Defendants "purposefully availed [themselves] of the privilege of conducting business in the forum." *Id*. The evidence supports that Defendants did so here through the operation of the RTB System within the state, the business decisions made to contract with Illinois-based buyers and sellers of advertisements through the RTB System, and the conduct of their Illinois-based employees.

**1. The RTB System's Connections to Illinois.**

First, Defendants confirm that the RTB System collects Illinoisans' IP addresses, approximates those individuals' locations, then repackages that information into "bid requests" that it sends to potential advertisers. (Ex. A, Index Exchange Supp. Resp. to Interrog. No. 4 (affirming that "Index Exchange approximates the location of a visitor to a website that uses Index Exchange's SDK based on the visitor's IP address," and that it shares this location data with demand-side partners, including fields for "country, region/state, city, and zip").)[1] Index Exchange thus takes an active role in collecting an IP address, mapping it onto a real-world location (including in Illinois) using [redacted] (*see* Ex. B, INDEXINC_000192), and sending that geolocation data to its advertising partners. [redacted]

[1] Each exhibit referenced is attached to the Declaration of Michael Ovca in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, filed contemporaneously herewith.

[redacted]. (Ex. B, INDEXINC_000192–193; Ex. C, INDEXINC_000253–254 ([redacted]). Defendants' advertising partners can place bids utilizing any location data in the bid requests. It is a reasonable inference that bid requests that include such data are more valuable to advertisers than those that do not—for example a company is likely to pay more (or place a bid in the first place) to advertise to a potential customer it knows is in its service area, as opposed to someone who could be located anywhere in the country—and can be priced accordingly. (*See* Ex. B, INDEXINC_000168–170 [redacted].)

Second, the scale of the RTB System's operation within Illinois confirms Defendants have "purposefully availed [themselves] of the Illinois market for its services through its deliberate and continuous exploitation of that market." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 429 (7th Cir. 2010); *see also Dzananovic v. Bumble, Inc.*, 21-CV-06925, 2023 WL 4405833, at *4 (N.D. Ill. July 7, 2023). In just a one-year period, the RTB System delivered [redacted] ad impressions to users associated with an Illinois IP address. (Ex. D, INDEXINC_000264.) Index Exchange attempts to hedge this number, claiming that this figure could reflect instances where the same individual may be shown ads across devices or within the same browsing session. (Ex. E, Index Exchange Supp. Resp. to RFP 19.) However, if it's true that Index Exchange does not track unique users, as it claims (*id.*), it cannot simultaneously assert that individuals are double-counted among the almost [redacted] impressions. And even accepting Index Exchange's explanation, this only shows that the RTB System can persistently track, show ads to, and monetize individuals even after it knows they are in Illinois. Serving Illinoisans nearly [redacted] ad impressions is hardly the "incidental contact" with Illinois that

Defendants have claimed it is. (Dkt. 47 at 4); *see also Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (rejecting argument that defendant "does not expressly aim its conduct at [forum state] because it operates nationwide and thus is agnostic as to the location in which it data-mines the consumers' personal identifying information").

**2. Index Exchange's Illinois-Based RTB Contracts.**

Besides the connections through their RTB System described above, Index Exchange has also exploited the Illinois market by entering into contracts with entities on both sides of its advertising exchange: those that make advertising spots available on their websites and apps through the RTB System, and those who purchase those ad spots to display ad impressions to viewers. [redacted] (Ex. F, INDEXINC_000263.) These Illinois-based contracts have [redacted] (*Id.*) [redacted] (*Id.*) Jurisdictional discovery has demonstrated Index Exchange signed profitable commercial agreements with Illinois-based companies to integrate into the RTB System at the heart of this case. This further demonstrates Index Exchange availed itself of the privilege of doing business in the state.

**3. IE USA Has Illinois-Based Employees Working with the RTB System.**

Turning to IE USA, it argued that it "plays no role in the operation of the SSP" and "lacks any contacts" with Illinois. (MTD at 9.) Jurisdictional discovery has refuted these assertions.

Not only is IE USA registered to do business in Illinois (dkt. 44-1), but it has Illinois-based employees, (Ex. G, IE USA Resp. to Interrog. No. 5). While IE USA urges that some of these employees are not "involved with the development, operation, maintenance, or administration of the OpenRTB protocol," *id.*, this is an attempt at a technical distinction. These employees may not take an active role in coding the software underlying the RTB System—i.e., the OpenRTB software protocol that runs the exchange—but IE USA's own interrogatory response confirms they are actively involved in supporting the RTB System's operation and profitability. Specifically, the first role is a Regional Director of Account Management for Asia-Pacific whose role is to manage publisher and partner clients—i.e., the partners discussed above with which Index Exchange has agreements regarding the RTB System. (*Id.*) Similarly, the Manager, Account Management role aims at managing customers and sales. (*Id.*) Finally, the third employee is a Buyer Development Director who is tasked with "manag[ing] day-to-day relationships with buyers of online ad space." (*Id.*) Additionally, if the Buyer Development Director's job did not involve "the development, operation, maintenance, or administration of the OpenRTB protocol" in any way, IE USA presumably would have said so. They did not. *Id.* While Defendants previously called the existence of any Illinois-based employees "[s]peculative," (Dkt. 47 at 4), jurisdictional discovery shows they do exist and that their roles are connected to facilitating sales tethered to the RTB System and partnerships with third parties like Temu.

In addition to these employees, IE USA plays a critical operational role in connection with the RTB System. IE USA signed a service agreement with Index Exchange that obligates [redacted] (Ex. H, INDEXUSA_000034–36 §§ 2.1(a), 2.2.) The same agreement requires [redacted]

[redacted] § 2.1(b)), [redacted] § 2.1(c) [redacted] In other words, the roles of IE USA's Illinois-based employees precisely track the obligations set out in IE USA's service agreement.

**B. Plaintiff's Claims Relate to the Forum Connections.**

The relatedness prong assesses if the claimed injury "arise[s] out of or relate[s] to the defendant[s'] forum-related activities[.]" *B.D. by & through Myer*, 91 F.4th at 861. This is satisfied if "the 'relationship among the defendant, the forum[s], and the litigation' is close enough to support specific jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 371 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (cleaned up). A "strict causal relationship" is not required. *Ford Motor Co*., 592 U.S. at 362. Here, Plaintiff's claims are related to Defendants' connections with the forum. The same process of collecting an IP address, determining its real-world location, and broadcasting that and other data, such as persistent identifiers and URL data, in bid requests to third parties (Ex. A, Index Exchange Supp. Resp. to Interrog. No. 4) is exactly what Plaintiff alleges happened to him. The fields Defendants identify as being sent to third parties in bid requests are the same fields that would have been sent to Temu's endpoint via the same mechanism, (Ex. A, Index Exchange Supp. Resp. to Interrog. No. 4; Ex. B, INDEXINC_000192–193), and [redacted] (Ex. H, INDEXUSA_000035–36). Plaintiff and putative class members would be among the [redacted] ad impressions delivered to Illinoisans. (Ex. D, INDEXINC_000264.) And Temu is appropriately categorized as a "partner client" or "buyer[] of online ad space" that would apparently fall under the purview of IE USA's Illinois-based employees. (Ex. G, IE USA Resp.

to Interrog. No. 5.) Because this conduct gives rise to his ECPA claim and invocation of the Bulk Sensitive Data rule, Plaintiff satisfies the relatedness prong.

**C. It Is Not Unfair to Require Defendants to Litigate in Illinois.**

The final jurisdictional element looks to whether exercising jurisdiction over a defendant "would comport with 'fair play and substantial justice.'" *B.D. by & through Myers*, 143 F.4th at 774. The jurisdictional evidence underscores that requiring Defendants to litigate in Illinois would not be unfair. Their RTB System operates within the state, serving [redacted] ad impressions to Illinoisans; there are three Illinois-based employees in sales roles related to that system that work at an Illinois-registered company; and [redacted] Defendants cannot credibly claim surprise that claims stemming from RTB System-related conduct could be subject to an Illinois Court. What's more, Defendants do not suggest that an alternative forum would be fair. To the contrary, crediting Index Exchange's argument that the RTB System is a neutral platform such that it does not purposefully avail itself of any state's law would mean that no court in the United States could exercise jurisdiction over it. Courts have dismissed such arguments as an attempt to reap "the benefit of a nationwide business model with none of the exposure." *Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010). The Court should do the same here.

**III. CONCLUSION**

For the reasons set forth in his Opposition and explained above in this supplemental filing, Plaintiff has met his burden to make a prima facie showing that personal jurisdiction exists. *B.D. by & through Myers*, 143 F.4th at 762. Defendants' Motion should be denied.

Respectfully submitted,

**JOHN BAKER**, individually and on behalf of all others similarly situated,

Date: May 22, 2026

By: *<u>/s/ Michael Ovca</u>*
One of Plaintiff's Attorneys

Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Attorney for Plaintiff and the putative Class*